# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** [X] COMPLAINT    [ ] INFORMATION    [ ] INDICTMENT    [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

## OFFENSE CHARGED

18 USC section 1029(a)(2) - Use of Unauthorized Access Device
8 USC section 1326(a)

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

**PENALTY:** Count 1: 10 years imprisonment, $250,000 fine, Restitution, 3 years supervised release, mandatory special assessment, deportation, forfeiture Count 2: 2 years imprisonment, $250,000 fine, 3 years supervised release, special assessment, deportation, forfeiture

## DEFENDANT - U.S

Marius Marian a/k/a Jonas Muller, a/k/a Marius Mihai-Petrus, a/k/a Aadhunik Taarank

**DISTRICT COURT NUMBER**
4:25-mj-70674 MAG

**FILED**
Jun 04 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## DEFENDANT

**IS NOT IN CUSTODY**
1) [ ] Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶ _____
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District) _____

**IS IN CUSTODY**
4) [X] On this charge
5) [ ] On another conviction    [ ] Federal [ ] State
6) [ ] Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution _____

Has detainer been filed? [ ] Yes [ ] No    If "Yes" give date filed _____

**DATE OF ARREST** ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____

## PROCEEDING

**Name of Complaintant Agency, or Person (& Title, if any)**
DSS Special Agent Taylor Frechette

[ ] person is awaiting trial in another Federal or State Court, give name of court _____

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District _____

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
[ ] U.S. ATTORNEY    [ ] DEFENSE

**SHOW DOCKET NO.** _____

[ ] this prosecution relates to a pending case involving this same defendant

**MAGISTRATE CASE NO.** _____

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under _____

**Name and Office of Person Furnishing Information on this form**
Craig H. Missakian
[X] U.S. Attorney [ ] Other U.S. Agency

**Name of Assistant U.S. Attorney (if assigned)**
Emily R. Dahlke

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
[ ] SUMMONS [ ] NO PROCESS* [X] WARRANT    Bail Amount: _____

If Summons, complete following:
[ ] Arraignment [ ] Initial Appearance

Defendant Address: _____

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____    Before Judge: _____

Comments:

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
Jun 04 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

United States of America
v.
Marius Marian
a/k/a Jonas Muller,
a/k/a Marius Mihai-Petrus,
a/k/a Aadhunik Taarank

Case No. 4:25-mj-70674 MAG

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of June 3, 2025 in the county of Contra Costa in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC Section 1029(a)(2) | Use of Unauthorized Access Device |
| 8 USC Section 1326(a) | Reentry of Removed Alien |

This criminal complaint is based on these facts:

Please see the attached affidavit of Special Agent Taylor Frechette, U.S Departmnet of State, Diplomatic Security Service

☑ Continued on the attached sheet.

/s/ Taylor Frechette
*Complainant's signature*

Taylor Frechette, Special Agent, DSS
*Printed name and title*

Approved as to form  /s/ Emily R. Dahlke
AUSA Emily R. Dahlke

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 06/03/2025

*Judge's signature*

City and state: Mckinleyville, California

Hon. Robert M. Illman US Magistrate Judge
*Printed name and title*

### AFFIDAVIT OF SPECIAL AGENT TAYLOR FRECHETTE
### IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Taylor Frechette, Special Agent with the U.S. Department of State, Diplomatic Security Service (DSS), being duly sworn, do declare and state the following:

### INTRODUCTION

1. This affidavit is made in support of a Criminal Complaint charging Marius **MARIAN** a/k/a Jonas Muller, a/k/a Marius-Mihai Petrus a/k/a Aadhunik Taarank with a violation of Title 18, U.S. Code, Section 1029(a)(2) (Fraud and Related Activity in Connection with Access Devices), and a violation of Title 8, U.S. Code, Sections 1326(a) (Reentry of Removed Alien) that took place in the Northern District of California on or about June 3, 2025.

2. Because this Affidavit is submitted for the limited purpose of obtaining a criminal complaint and arrest warrant for **MARIAN**, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to establish probable cause that the violations of the federal laws identified above have occurred.

3. I have based my statements in this affidavit on my training and experience, my personal knowledge of the facts and circumstances obtained through my participation in this investigation, interviews with witnesses, information obtained from other law enforcement officers, information provided by reports prepared by other agents and law enforcement officers, information provided by records and databases, and my review of records relating to this investigation, all of which I believe to be reliable. As the investigation continues, my understanding of the events described herein may change and evolve depending on additional information learned about the facts and circumstances.

4. Where statements made by other individuals (including other law enforcement officers and witnesses) are referenced in this affidavit, such statements are described in sum and

1

substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this affidavit, such information is also described in sum and substance and in relevant part.

## QUALIFICATIONS OF AFFIANT

5. I am a Special Agent with the U.S. Department of State, Diplomatic Security Service ("DSS") assigned to the San Francisco Field Office and have been so employed since 2018. My training included completing the Criminal Investigator Training Program at the Federal Law Enforcement Training Center and the Basic Special Agent Course at the Diplomatic Security Training Center. I am assigned as a Task Force Officer ("TFO") to multiple squads within the San Francisco Field Office of the Federal Bureau of Investigation, including Transnational Organized Crime - East. As a DSS Special Agent, I am authorized to investigate violations of United States law and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. I have participated in investigations of passport fraud, money laundering, conspiracy, theft, identity theft, and fraudulent documents. I have conducted and participated in physical and electronic surveillance and the execution of search warrants. Through my training, education, and experience, I have become familiar with the way individuals impersonate and assume other identities and/or personas in order to commit fraud; forge, alter, and misrepresent documents to falsely present themselves; and conceal fruits of their crimes. Prior to my current position as a Special Agent with the DSS I served as an Intelligence Officer in the United States Army.

6. I have attended law enforcement trainings and have worked with other experienced fraud investigation and forensic analysis law enforcement personnel who investigate and/or participate in investigations of financial crimes, including conducting surveillance, executing

search warrants, and reviewing digital evidence containing numerous examples of offenses involving identity theft, money laundering, wire fraud, and access device fraud. I have participated in numerous criminal and national security investigations to include the execution of search and arrest warrants.

7. As a federal law enforcement agent, I am authorized to seek and obtain search warrants, arrest warrants, and investigate violations of federal laws including Title 8, U.S. Code Section 1326, Title 18, U.S. Code, Section 1029, Access Device Fraud, Title 18 U.S. Code, Section 1028A, Aggravated Identity Theft and Title 18 U.S. Code, Section 1344, Bank Fraud.

## APPLICABLE LAW

8. Title 18, United States Code, Section 1029(a)(2) makes it illegal for a person to knowingly use or traffic in an unauthorized access device and, with the intent to defraud, obtain at any time during a one-year period anything of value worth $l,000 or more, or things of value, their value together totaling $1,000 or more, when that conduct affects in some way commerce between one state and another state, or between a state of the United States and a foreign country

9. Title 8, United States Code, Section 1326(a) probits any alien who has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter enters, attempts to enter, or is at any time found in, the United States.

## FACTS ESTABLISHING PROBABLE CAUSE

### Overview of Illegal Skimming Activities Associated with Access Device Fraud

10. ATM and Point of Sale ("POS") skimming involves the placement of an electronic device that has the capabilities of reading and capturing the account information stored on a magnetic strip of a plastic bank card or debit card. In cases of a POS skimming, the

skimming device is typically an overlay designed to replicate the appearance of the genuine POS terminal which is then placed on top of a POS terminal at a retail establishment. In cases of ATM skimming, the skimming device, often referred to as a "deep-insert skimmer" is typically inserted inside of the ATM card acceptor slot utilizing a shim in such a fashion as to make it undetectable to the ATM customer. In both cases, the skimming devices have internal memory to store the information on the victim card's magnetic strip.

11. In instances of ATM skimming, a secondary device is typically used to capture the unsuspecting account holder personal identification number (PIN) via a micro digital camera focused on the PIN pad of the ATM. These are referred to as "pinhole" cameras. The pinhole cameras are frequently placed inside concealments designed to mimic the signage or other casement materials around the ATM. The POS skimming overlays typically have the capability to capture both the magnetic stripe and the user's PIN in one device.

12. After the skimming device(s) are installed, the suspect(s) return to recover the devices containing the full account information from the bank cards and the associated PINs. The devices are connected to a computer or mobile device to download the captured account information, PIN numbers and/or video of the PIN numbers. The suspect(s) then utilize a card reader/writer device connected to a laptop computer or similar electronic device to encode the stolen account information onto the magnetic strip of other cards with magnetic stripes. From my training and experience, I know that individuals engaged in skimming operations will often utilize gift cards or reloadable debit cards with no value as card stock. These reencoded cards are known as "clone cards." The PIN associated with a respective victim card is typically written on the plastic card or a sticker affixed to the plastic card and is ready to be used at any ATM to

withdraw the victim's benefit funds. The withdrawal phase of a skimming operation is typically referred to as a "cash-out".

13. ATM/POS skimming devices are often used more than once, and the criminals who use them often do so at more than one location at a time. Prior to use, or when not in use, the ATM/POS skimming equipment typically is stored in the location where the criminals are residing, within their vehicles, or in storage units under their control.

14. I know from my training and experience that skimming schemes often target pre-paid public benefits cards issued by a bank on behalf of a state agency because these cards are sometimes issued without a security chip, making them easier to exploit than chip-protected debit cards. These benefits are often referred to as Electronic Benefit Transfer (EBT) funds.

15. I know from my experience that California EBT funds are typically dispersed on the first, second, and third day of the month. The funds are made available to recipients beginning at 6:00 a.m. on each of these days. Because of this, illegal cash-out operations, like those described below, typically occur at ATMs in the early morning hours of the first day of the month. This is because the individuals who participate in EBT access device fraud want to withdraw the EBT funds before the victim accountholder has an opportunity to legitimately withdraw the EBT funds.

16. I know from training and experience, my knowledge of this investigation, and in talking to law enforcement and reviewing records from California DSS, that certain ATMs in Concord, California have been targeted by individuals engaging in suspected EBT access device fraud and cash-out schemes. These ATM's have typically been targeted by illegal cash-out operation activity in the hours after 6:00 a.m. Each month, the California Department of Social Services (CA DSS) generates a report of suspected fraudulent EBT transactions. Based on this

dataset, in Concord between January 2025 and April 2025, there were three separate financial institutions defrauded of approximately $46,656 through suspected EBT fraud.

### MARIAN'S Immigration History

17. Marius **MARIAN**, a/k/a Jonas Muller, a/k/a Marius-Mihai Petrus, Aadhunik Taarank, is a Romanian National born November 6, 1985. **MARIAN** initially applied for a U.S. Visa in 2015 and was refused. He reapplied in 2018 and was again refused. Border crossing information for **MARIAN** shows that he has never legally entered the United States. Following his arrest and federal conviction (further described below), **MARIAN** was issued an Administrative Final Removal Order on or around September 4, 2019. **MARIAN** was then physically removed from the United States in 2019.

18. In 2018, **MARIAN** was the subject of an investigation conducted by Homeland Security Investigations (HSI) in Pennsylvania. Through the course of their investigation, HSI discovered **MARIAN** had assumed a false identity in the name of "Jonas Muller." **MARIAN** then used that fictious identity to defraud a bank. The investigation showed that **MARIAN** (fraudulently using the Jonas Muller identity) used access codes that were illegally obtained from victims to access and withdraw funds that were under the control of the financial institution which he had no legal right to. As a result of this scheme, MARIAN was prosecuted by the United States Attorney's Office for the Western District of Pennsylvania. He pled guilty to a violation of 18 U.S.C 1344 – bank fraud, a felony. As a result of the federal prosecution for this crime, **MARIAN** served approximately 8 months in custody. He was also ordered pay restitution in the amount of $16,200. Following his release from federal custody, **MARIAN** was physically removed from the United States in 2019, as described above.

19. Sometime between 2019 and present, **MARIAN** reentered the United States. As

further described below, he was encountered by law enforcement in Concord, California in the Northern District of California, on June 3, 2025. A review of Department of State databases shows that he does not have a valid visa to be in the United States and he is present in the United States illegally.

20. On June 3, 2025, in a post-arrest, Mirandized interview, **MARIAN** told law enforcement that during his most recent entry into the US, he illegally crossed the land border into the United States crossing the US / Mexico land border near Tijuana.

21. On June 3, 2025, **MARIAN**'s fingerprints were taken as part of the standard arrest procedures. His fingerprints were electronically submitted to the Department of Justice. ICE records confirmed that the fingerprints taken from **MARIAN** associate him to the prior arrest and deportation of Marius Marian a/k/a Jonas Muller in 2019. A review of law enforcement databases show that there has been no reapplication for a U.S. Visa and no legal border crossing back into the United States by Marius **MARIAN** a/k/a Jonas Muller.

## Background of Investigation into MARIAN

22. On June 3, 2025, law enforcement personnel from the FBI, the US Department of Agriculture – Office of the Inspector General (USDA-OIG), and the United States Secret Service initiated a surveillance operation of banks believed to be targeted by skimmers in Concord, CA. Concurrent to the physical surveillance, the USDA-OIG conducted real time monitoring of EBT transactions at the targeted ATMs.

23. At approximately 5:59 AM, an FBI Agent observed a male, later identified as **MARIAN**, appearing to make multiple transactions at the Citibank located at 4420 Treat Blvd, Concord, CA. USDA-OIG reported that in the span of six minutes, between 6:00 AM and approximately 6:06 AM, there were approximately eight transactions, utilizing nine unique EBT

7

cards, for a total withdrawal of $5,100 cash at the Citibank located at 4420 Treat Blvd, Concord, CA. Agents observed the individual conducting simultaneous transactions at two separate ATMs located at the Citibank. This observation is consistent with the EBT transaction data later provided by USDA – OIG.

24. Based on my training and experience, individuals conducting legitimate transactions at ATMs do not typically transition between multiple cards in rapid succession to conduct multiple transactions in a short period of time.

      a. **Other Relevant Surveillance Observations**

25. Based on the date, time, location, presence of multiple and successive ATM withdrawals on multiple EBT cardholder accounts during a short period of time, at approximately 6:07 AM, agents attempted to make contact with **MARIAN** in order to further investigate. Agents identified themselves to **MARIAN** as law enforcement. **MARIAN** then attempted to flee on foot. While attempting to flee, Agents observed what appeared to be US currency coming from **MARIAN's** person. During a subsequent search of the area where the currency fell, an FBI agent discovered multiple credit cards in the vicinity of the bank and the roadway.

26. On his person, **MARIAN** was in possession of 21 clone cards as well as identity cards from California, Greece and an International Drivers License. The California identity card was a California Drivers License bearing the name Marius-Mihai Petrus, the Greek identity card and International Driver's license both display the name Aadhunik Taarank. I know from my training and experience that actors engaging in EBT fraud schemes, such as access device fraud, will often utilize alias identity documents, likely in an attempt to obscure their true identities from law enforcement.

27. Following the arrest of **MARIAN**, Agents recovered $5,100 cash that was thrown by **MARIAN** while he was attempting to flee.

28. During the search incident to arrest, 21 credit and/or debit cards were seized from **MARIAN's** person. Another six were recovered after he threw them while fleeing. Of the 27 total cards recovered during the arrest of **MARIAN**, 10 of the cards had his name or a known alias for him. The other 17 appeared to be gift cards. Based on my training and experience, I know these cards are commonly used to encode skimmed or otherwise stolen victim information to use in cash out type schemes.

29. The USDA-OIG agent processed the 17 suspected clone cards and determined that they included the nine cards used to access unique accounts at the Citibank on June 3, 2025 in Concord, California. The USDA-OIG agent was able to confirm that these cards held data that were used to access the accounts between 6:00 A.M. and 6:06 A.M. on June, 2025. Information provided by USDA-OIG show that between 6:00 AM and 6:06 AM, multiple EBT accounts were rapidly accessed from two ATMs located at Citibank in Concord, California. Between two separate ATMs, **MARIAN** accessed eight unique accounts in order to withdraw money and accessed one unique account to conduct a balance inquiry. **MARIAN** successfully withdrew $5,100 cash from eight unique accounts.

30. Based on my training and experience conducting access device fraud investigations, including investigations specifically targeting EBT fraud, I know that suspects perpetuating this fraud will often conduct balance inquires, so the individuals know exactly how much funds are available for withdrawal.

31. An EBT card number ending in 8063 was recovered from **MARIAN**. CA DSS records reflected that the card ending in 8063 was utilized for a withdrawal of $580 on June 3,

2025 at approximately 6:03AM from the Citibank in Concord. On the same date, an FBI Agent interviewed the victim associated with the card ending in 8063 (VICTIM 1). VICTIM 1 reported that they were not located in Concord, California on June 3, 2025, but rather, VICTIM 1 reported they were in Merced, California. VICTIM 1 had not authorized **MARIAN** to utilize their EBT card and did not authorize a transaction made on June 3, 2025. Before being contacted by law enforcement, VICTIM 1 was unaware of the loss.

32. An EBT card number ending in 4267 was recovered from **MARIAN**. CA DSS records reflected that the card ending in 4267 was utilized for a withdrawal of $720 on June 3, 2025 at approximately 06:01 AM. On the same date, an FBI Task Force Officer (TFO) interviewed the victim associated with the card ending 4267 (VICTIM 2). VICTIM 2 reported that they were not located in Concord, California on June 3, 2025, but rather in Fairfield, California. VICTIM 2 had not authorized **MARIAN** to utilize their EBT card and did not authorize a transaction made on June 3, 2025. VICTIM 2 was unaware of the loss, as she had just woken up for the day when the FBI TFO called.

## CONCLUSION

33. Based on the foregoing, probable cause exists to believe that on or about June 3, 2025, in the Northern District of California, Marius **MARIAN**, a/k/a Jonas Muller, a/k/a Marius-Mihai Petrus a/k/a Aadhunik Taarank utilized an access device to defraud something of value in excess of $1,000 in a one year period in a way that affected interstate commerce in violation of Title 18, United States Code, Section 1029(a)(2) and that Marius **MARIAN**, a/k/a Jonas Muller, a/k/a Marius-Mihai Petrus a/k/a Aadhunik Taarank violated 8 U.S.C §§ 1326(a)– Reentry of Removed Alien.

34. Accordingly, I respectfully request that the complaint and a warrant for the arrest of Marius **MARIAN** a/k/a Jonas Muller, a/k/a Marius-Mihai Petrus a/k/a Aadhunik Taarank be issued.

Respectfully Submitted,

*/s/ Taylor C. Frechette*

Taylor C. Frechette
Special Agent
Diplomatic Security Service

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on this 3rd day of June 2025

HONORABLE ROBERT M. ILLMAN
United States Magistrate Judge

11